NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Argued September 15, 2009
Decided  February 8, 2010

*Before*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOEL M. FLAUM, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 08-2618

| | |
|---|---|
| FIRST BANK AND TRUST COMPANY OF ILLINOIS, | ] Appeal from the United ] States District Court for |
| *Plaintiff-Appellee,* | ] the Northern District of ] Illinois, Eastern Division ] |
| v. | ] No. 0752-1 : 1:06-cv-03182 ] ] |
| AVRAM CIMERRING and CINDY CIMERRING, | ] |
| *Defendants-Appellants.* | ] **Ronald A. Guzman,** ] *Judge.* |

*O R D E R*

First Bank and Trust Company of Illinois ("First Bank") filed a lawsuit for breach of contract against Avram and Cindy G. Cimerring.  The suit alleged that loans made by First Bank and guaranteed by the Cimerrings were in default, and demanded that the Cimerrings pay the amount due on the loans.  The Cimerrings responded by denying

that any amounts were past due, and by asserting counterclaims which we will not discuss because they are irrelevant to the current appeal. The district court granted summary judgment to First Bank, holding that the loans were in default and entering judgment for the amount owed.

The loans underlying the case were commercial loans that were guaranteed personally by the Cimerrings. The first was initiated in March 2004 to CGC Wintergreen Apartments, known as the Wintergreen loan, and the second loan was made two months later to a number of borrowers including CGC Bridgeway Apartments, LLC, and known as the Bridgeway loan. The Cimerrings executed a Guaranty of Payment and Performance for each of the loans which personally guaranteed the loans until paid in full.

As a result of subsequent amendments, the loans were cross-collateralized and incorporated terms under which a default on one loan would be considered a default of the other as well. We need not detail the subsequent amendments, because there is no disagreement as to the relevant default provisions for the loans. The only issue is whether the district court properly determined that the Cimerrings defaulted on the loan as a matter of law.

The loan agreements provided for over 20 "Events of Default" - - a number of which are arguably met here. In the initial complaint, First Bank alleged a default based on the failure to make timely payments. In subsequent amendments, First Bank added a number of other bases for the default, including: the filing of criminal charges for which forfeiture of assets is a potential penalty, against the "borrower party" or any of the managers; the filing of bankruptcy by any of the borrower party; and the failure of the borrower to diligently prosecute compliance with the building code regulations. First Bank argues to this court that the Cimerrings were barred by collateral estoppel from contesting default. First Bank could have obtained summary judgment on any number of these grounds. The district court considered only the default related to the filing of a criminal charge, and granted summary judgment on that ground. We affirm on that as well, and therefore need not consider the other potential grounds of default.

The default clause related to the criminal charge provides that an event of default occurs upon "[t]he filing of formal charges by any governmental or quasi-governmental entity, including, without limitation, the issuance of an indictment, under a RICO Related Law against any Borrower Party." The term "RICO Related Law" is defined as

"the Racketeer Influenced and Corrupt Organizations Act of 1970 or any other federal, state, or local law for which forfeiture of assets is a potential penalty." On June 7, 2005, Avram Cimerring pled guilty in Kentucky state court to 11 counts of theft by deception of over $300.00 in violation of Kentucky Revised Statute § 514.040 and was sentenced to three years' pretrial diversion. Under Kentucky law, upon a conviction for certain offenses including theft by deception, property held in violation of the chapter and any personal property used in the commission or furtherance of the offense shall be forfeited. Ky. Rev. Stat. § 514.030. Therefore, Avram Cimerring, a borrower party under the loan agreement, pled guilty to 11 counts of violation of a state law for which forfeiture of assets was a potential penalty.

Cimerring first attempts to avoid this default by asserting that there is no evidence that he was actually charged with theft by deception, as the only evidence of record indicates the counts to which he pled guilty. The contention that Avram Cimerring pled guilty to 11 counts of theft by deception but was never charged with those offenses is specious. The Cimerrings are entitled only to *reasonable* inferences of fact. *SMS Demag Aktiengesellschaft v. Material Sciences Corp.*, 565 F.3d 365, 369 (7th Cir. 2009); *Omosegbon v. Wells*, 335 F.3d 668, 677 (7th Cir. 2003). They have presented no evidence from which one can reasonably infer that Avram Cimerring was not charged with the counts to which he pled guilty. When presented with that apparent contradiction, the Cimerrings resort to an equally insupportable alternate argument that Avram Cimerring was never convicted of theft by deception because his guilty plea was accepted and he was granted pretrial diversion. The Cimerrings further argue that not all convictions under theft by deception will result in forfeiture of assets, and under some facts forfeiture of assets will not occur.

We need not tarry over any of these contentions, because they are red herrings. The loan agreement states that it is a default if the borrower party is charged under a law for which forfeiture of assets is a potential penalty. The undisputed evidence of record is that Avram Cimerring, a borrower party, was charged with 11 counts of theft by deception, as evidenced by his plea of guilty to those charges, and that law provides as a potential penalty the forfeiture of assets. Cimerring ignores the plain language of the loan agreement in arguing such irrelevancies as whether he was convicted or whether on the facts of his criminal case -- undeveloped given the guilty plea -- his assets could have been forfeited. The agreement requires only a *charge*, and that the *law* provide for the potential penalty of forfeiture of assets. Those conditions are indisputably met: he was charged under a law that provides for forfeiture of assets, and

that constitutes a default under the loan agreement regardless of whether he was convicted and whether forfeiture actually was ordered. Therefore the district court properly determined that First Bank had established default as a matter of law.

Cimerring attempts to avoid that conclusion by arguing that, under the "mend the hold" doctrine, First Bank cannot assert the criminal charge as a basis for default because it first asserted the Cimerrings were in default based on the shortfall in payments. The mend the hold doctrine provides that a contract party is not permitted to change its position on the meaning of a contract in the middle of litigation over it. *See RLI Insurance Co. v. Conseco, Inc.*, 543 F.3d 384, 392 (7th Cir. 2008); *Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 746 (7th Cir. 2008); *Utica Mut. Ins. Co. v. Vigo Coal Co., Inc.*, 393 F.3d 707, 716 (7th Cir. 2004). First Bank has consistently maintained that the loans are in default because payments were not timely made, but had added additional grounds of default as well, thus not reversing its position but expanding it. We need not determine whether such an action can be considered a change of position under the mend the hold doctrine, because the Illinois courts have held that the mend the hold doctrine cannot be applied absent a showing of detriment or unfair surprise. *United Farm Family Mut. Ins. Co. v. Frye,* 887 N.E.2d 783, 790 (Ill. App. 4 Dist. 2008); *Trossman v. Philipsborn*, 869 N.E.2d 1147, 1164 (Ill. App. 1 Dist. 2007); *Grinnell Mut. Reinsurance Co. v. LaForge*, 863 N.E.2d 1132, 1141 (Ill. App. 4 Dist. 2006). The Cimerrings have made no argument to this court that the additional grounds of default resulted in such detriment or unfair surprise, nor is any apparent on the record. In fact, the record indicates the opposite. Avram Cimerring pled guilty on June 7, 2005. On July 8, 2005, the Cimerrings signed an amendment to the loan agreement increasing the loan amount, at which time they represented that no conditions of default existed of which they were aware. Avram Cimerring was, of course, aware of his own guilty plea, and the existence of the default provision related to the filing of criminal charges. There is no indication of detriment or unfair surprise here, and therefore the Cimerrings have failed to demonstrate a basis for application of the mend the hold doctrine. The only remaining argument, that the default was not a continuing one, was not raised in the district court and is waived. *Metzger v. Illinois State Police*, 519 F.3d 677, 681-682 (7th Cir. 2008); *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 608 n. 4 (7th Cir. 2007).

The decision of the district court granting summary judgment in favor of First Bank is **AFFIRMED**.